### ALLEGED LIBEL OF A COURT STENOGRAPHER.

Circuit Court of Cuyahoga County.

HARRIET HUNT v. THE MERIDIAN PRINTING COMPANY.*

Decided, December 19, 1910.

*Libel—No Special Damages—Libel per se for Court—Classes of Libels per se—Imputation of Petition—Destruction of Property—Libel on Stenographer in her Occupation.*

1. Where in an action for libel, no special damages are alleged, the article complained of is either a libel *per se,* or it is not a libel at all, and this is a question for the court.
2. Libels *per se* are of three classes: (1) imputing an indictable offense, involving moral turpitude or infamous punishment; (2) imputing a contagious or offensive disease or condition, tending to ostracize; (3) tending to injure one in one's occupation.
3. If a publication does not warrant the imputation of criminality, placed upon it by the petition, it is not libelous.
4. The petulant destruction of another's property of trifling worth is not a crime involving infamous turpitude or punishment.
5. It is the duty of a stenographer to take proper care of and not to destroy valuable records and papers committed to her custody in

---

*Affirmed without opinion, *Meridian Printing Co.* v. *Hunt,* 87 Ohio State, 522.

the course of her employment as such.   To impute a contrary course of conduct to her tends to injure her in her occupation, and is libelous *per se.*

*Charles F. Morgan,* for plaintiff in error.
*Gage, Wilbur & Williams,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

The parties stand as they stood below.   The action was libel there.   The newspaper article complained of is as follows:

### "STRIKE AGAINST ORDER TO LEAVE.

"Court Stenographers Refuse to Accept Discharge.

"Twelve judges of the common pleas court do not know that they have another strike on their hands.   The strikers, two in number, neglected to inform them of their stand.   Couriers went back and forth exchanging news of the trouble Friday.

" 'We do not know that we have been discharged by the judges,' said Miss Harriet Hunt, court stenographer, under the title of court constable (until last Wednesday).   Miss Margaret Kane nodded her approval of the declaration.

" 'We have no official stenographers or constables,' echo all the judges.   'The two we had were discharged Wednesday.   Their pay stopped at once.   That goes.'

"But the constables have not gone.   They were discharged because they went on strike—refused to take the testimony in the Holden murder case.   Now they have declared another strike.   They refused to be discharged through the newspapers.

"But the latest strike is not a walkout.   To the contrary, as the stenogs are still holding forth in the official constables' office on the third floor of the old court house.

"Word came to one of the judges Thursday that the ex-officials were occupying themselves, destroying papers and records in their possession.   'Those papers are county property and must be accounted for' said that particular judge.   No names are to be mentioned.

"Journal clerk Burke was instructed at noon Thursday to mail the strikers a copy of the journal entry made in their case."

The innuendo, among other things, charge that the next to the last paragraph falsely and maliciously attributes to plaintiff the commission of "the crime of malicious destruction of property not her own;" and the petition further alleges that:

"Said entire article, as a whole, and each part thereof, separately as above set forth, is a false, malicious and brutual libel upon plaintiff and published of her, both individually as a lady, and in her business of stenographer."

The petition does not, however, lay any special damages, but prays generally for "judgment for damages against defendant in the sum of $25,000." The article is therefore a libel *per se,* or it is not a libel at all; and this is a question for the court. *Mark* v. *Brundage et al,* 68 Ohio St., 89.

The court below sustained a general demurrer to the petition and rendered final judgment for the defendant. The plaintiff seeks here to reverse this judgment.

Libels *per se* embrace words of but three classes, (1) Imputing an indictable offense, involving moral turpitude or infamous punishment; (2) Imputing a contagious or offensive disease, or condition tending to ostracize; or (3) Tending to injure one in one's occupation.

The first and last of these are in question here. As to the first:

"By this rule the infamy of the offense or of the punishment constitutes the test whether the words are actionable, when an indictable offense is charged upon the plaintiff.   *   *   *   The nature and turpitude of the offense charged are the *criteria* by which to decide whether the injury is such as to be the foundation of an action. A charge of assault and battery—of fighting at fisticuffs—of refusing to aid an officer to arrest criminals, resisting an officer in the execution of process, keeping a ferry or tavern without license, and others of the like class, though subject to indictment and punishment, and of themselves reprehensible, as violations of positive law, do not imply that degree of moral depravity which will sustain an action of slander for words spoken imputing such offense." *Dial* v. *Holter,* 6 Ohio St., 228, 241-2.

Words libelous *per se,* as imputing criminalty to anyone "must first, be such as charge him with an indictable offense; and, second, the offense charged must involve a high degree of moral turnpitude, or subject the offender to infamous punishment." *Hollingsworth* v. *Shaw,* 19 Ohio St., 430 and 433.

The crime of malicious destruction of property and its punishment are defined as follows by Section 6863, Revised Statutes (General Code, 12477):

"Whoever maliciously destroys or injures property not his own, if the value of the property destroyed, or the injury done is one hundred dollars or more, shall be imprisoned in the penitentiary not less than one year nor more than seven years, or, if the value is less than that sum, shall be fined not more than five hundred dollars or imprisoned not more than thirty days, or both."

The crime of maliciously destroying public records or papers, and its punishment, are defined by Section 7095, Revised Statutes (General Code, 13088):

"Whoever maliciously alters, defaces, mutilates, destroys abstracts or conceals the whole or part of a record, authorized to be made by law, of or pertaining to a court, justice of the peace or a state, county, township or municipal office or officer, or other public record authorized by law or a paper or writing duly filed with, in or by such court, office or officer, shall be fined not more than three hundred dollars or imprisoned not more than three months, or both."

The petition, by its innuendo, clearly founds the imputation of criminality upon the first of these two offenses, whereas the publication as clearly imputes the second, if it imputes either. Now, the innuendo may elucidate, construe and apply (and hence, of course, restrict), but it can not enlarge, the meaning of a libel (*State* v. *Smily*, 57 Ohio St., 34, 35). If, then, the publication does not warrant such construction as the petition seeks to put upon it, viz., an imputation of "the crime of malicious destruction of property not her own," made punishable by Section 6863, Revised Statutes (General Code, 12477), it follows that the publication is not libelous for imputing criminality. The facts alleged in the petition for it shows that the publication did not impute to plaintiff the crime which the pleader alleges and relies on (*Hamm* v. *Wickline*, 26 Ohio St., 83). Moreover, it fails to allege whether the publication imputed to plaintiff the destruction of property worth more or property worth less than one hundred dollars. These indeed are kindred offenses; but

the punishment of imprisonment in the penitentiary is necessarily visited upon anyone guilty of the one, whereas only a fine and thirty days' imprisonment in jail is the maximum penalty for the latter offense.   Infamy and turpitude are very differently related to the two cases respectively, and it can hardly be claimed that the petulant destruction of another's property of trifling worth is a crime involving infamous turpitude or punishment.

If the charge of criminality relied on by the pleader were, as it should manifestly have been, the violation of Section 7095, Revised Statutes (General Code, 13088), prohibiting the malicious destruction of public records or papers, the maximum penalty is $300 fine and three months' imprisonment in jail.   No penitentiary sentence is possible, Section 6794, Revised Statutes (General Code, 12370).   The punishment is therefore not infamous.   The offense may or may not involve great moral turpitude; but there is nothing whatever in the libel itself, or in the allegations of the petition, to indicate that the records and papers said to have been destroyed were of any particular importance, or such as, if necessary, could not readily be duplicated; and if they were not, their destruction surely involved no such "high degree of moral turpitude" as the law of libel contemplates.

We hold, therefore, that this alleged libel is not such *per se* so far as imputing criminality is concerned.

It is otherwise, however, as regards the claim that it is of a nature tending to injure plaintiff in her business as a stenographer.   It is the duty of a stenographer to take proper care of and not to destroy valuable records and papers committed to her custody in the course of her employment as such.   To impute a contrary course of conduct to a stenographer certainly tends as such to injure him, or her, in the pursuit of that occupation as to impute drunkenness to a clergyman.   The injury is the same in kind if not necessarily so in degree (*Hayner* v. *Cowden,* 27 Ohio St., 292).   In this, and in this only, do we think the petition states a cause of action.   For error in sustaining the demurrer to the petition, the judgment is reversed and the cause remanded.